## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| |
|---|
| **SIXGEN, INC.,** |
| Plaintiff, |
| v. |
| **UNITED STATES,** |
| Defendant, |
| and |
| HUNTER STRATEGY, LLC, |
| Intervenor. |

Case No.  23-1827C

Senior Judge Bruggink

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this motion to dismiss the complaint filed by Plaintiff SIXGEN, Inc. (SIXGEN).  SIXGEN challenges the decision of the Administrative Office of the United States Courts (AOUSC) to award a contract to Hunter Strategy, LLC (Hunter).   For the reasons below, the Court should dismiss SIXGEN's complaint for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

The AOUSC is an entity within the judicial branch.  *See* https://www.uscourts.gov/about-federal-courts/judicial-administration.  The mission of the AOUSC is to provide administrative, financial, legal, legislative, management, technology, and program support services to the federal courts and other judicial branch entities, such as the United States Sentencing Commission, Federal Judicial Center, and United States Probation and Pretrial Services Offices.  *Id.*

As part of its responsibilities, the AOUSC's Information Technology Office (ITSO) "provides cybersecurity support to the Federal Judiciary."  Compl. ¶6.    This includes "Red Team" services, which consist of "conduct[ing] cybersecurity assessments from an adversarial perspective to demonstrate possible impacts of worst-case breach scenarios before they happen."  *Id.*

On December 9, 2022, the AOUSC issued a Request for Quotation (RFQ) No. USCA23Q0002 for a single Time and Materials (T&M) type task order to procure support services for the Red Team operations, and amended the RFQ five times.  Compl. ¶7, *see* attached exhibit February 9, 2023 RFQ Amendment Five.  The RFQ contemplated the award of a task order with a 12-month base period, four 12-month option periods, and an additional option to extend services one or more times up to a maximum of six months.  Compl. ¶8. The RFQ indicated that the contract award would be made to "the responsible [o]fferor whose quote represents the best value to the Government."  Compl. ¶16.

The AOUSC received nine quotations, including those from SIXGEN and Hunter.  Based on the criterion set forth in the RFQ, on September 13, 2023, the AOUSC determined that Hunter presented the best value for a contract award and awarded the task order to Hunter. Compl. ¶33, Exhibit B.

SIXGEN filed this action challenging the evaluation and award of the T&M task order to Hunter under RFQ No. USCA23Q0002.  On October 19, 2023, the Court held a status conference with the parties.  At the status conference, defendant requested the Court entertain jurisdictional briefing before merits briefing.  SIXGEN agreed, and the Court granted that request.  *See* ECF No. 12.

**ARGUMENT**

**I.      Standard Of Review For A Motion To Dismiss**

Subject matter jurisdiction is a threshold issue.  *E.g.*, *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010); *Int'l Mgmt. Servs., Inc. v. United States*, 80 Fed. Cl. 1, 4 (2008).  It is well-settled that the plaintiff bears the burden of proving, by a preponderance of the evidence, that the Court possesses jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Myers Investigative & Sec. Serv. Inc. v. United* States, 275 F.3d 1366, 1369 (Fed. Cir. 2002).  If the Court concludes that it lacks subject matter jurisdiction, then it must dismiss the claim.  RCFC 12(b)(1); *Awad v. United States*, 61 Fed. Cl. 281, 283 (2004).

The Court's determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim.  *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997).  When considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court assumes the truth of all undisputed facts as alleged in the complaint and draws all reasonable inferences in the non-movant's favor.  *Lavezzo v. United States*, 74 Fed. Cl. 502, 507 (2006) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  However, when jurisdiction is challenged, the allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true for purposes of the motion, and the Court may consider evidentiary matters outside the pleadings.  *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).  "[O]nce the . . . Court's subject matter jurisdiction [is] put in question it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the [C]ourt's jurisdiction."  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

II.   **Bid Protest Jurisdiction**

This Court's bid protest jurisdiction under the Tucker Act is expressly limited in 28 U.S.C. § 1491(b)(1), which provides, in relevant part, for jurisdiction over a protest of "the award of a contract or any alleged violation of statute or regulation in connection with a procurement." *See Diaz v. United States*, 853 F. 3d 1355, 1357 (Fed. Cir. 2017) ("The Court of Federal Claims's jurisdiction over bid protest disputes is articulated in § 1491(b)(1)."). Jurisdiction is further limited over actions objecting to proposed or actual contract awards made "by a Federal agency."  28 U.S.C. § 1491(b)(1).

To determine whether an entity is a "Federal agency" under 28 U.S.C. § 1491(b)(1), and one over which the Court has jurisdiction, the Court applies the definition of "agency" provided in 28 U.S.C. § 451.  *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001).  In other words, under *Emery*, to determine its jurisdiction, this Court must consider whether the AOUSC falls within the definition of "agency" under § 451.[1]  *See id.*; *Terry v. United States*, 96 Fed. Cl. 131, 143 (2010) *aff'd in part, vacated in part*, 98 Fed. Cl. 736 (June 29, 2011) (relying on 28 U.S.C. § 451 to define "agency" under 28 U.S.C. § 1491(b)(1) for jurisdictional purposes).

Section 451 of Title 28 of the United States Code defines "agency" as:

[A]ny department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense.

---

[1] *See* 62 Stat. 907 (June 25, 1948) (copy attached).

**III.    SIXGEN Has Not Carried Its Burden To Establish That The AOUSC Is One Of The Entities Listed In 28 U.S.C. § 451**

This Court has never exercised jurisdiction over a protest from the AOUSC.  To date, in the only three cases protesting a procurement decision made by the AOUSC, this Court has dismissed those cases for lack of subject matter jurisdiction.[2]  *See Microgenics Corp. v. United States*, 152 Fed. Cl. 679, 683 (2021); *U.S. Security Associates, Inc. v. United States*, 124 Fed. Cl. 433, 438 (2015); *Novell*, *Inc. v. United States*, 46 Fed. Cl. 601, 614 (2000).  SIXGEN seeks to reverse course and establish, for the first time, that this Court has subject matter jurisdiction over procurement decisions made by the AOUSC.  However, as explained below, SIXGEN has not carried its burden of demonstrating that the AOUSC falls within the definition of "agency" in 28 U.S.C. § 451, and, thus, cannot demonstrate that it is a "Federal agency" for purposes of jurisdiction under 28 U.S.C. § 1491(b)(1).  Accordingly, the Court should dismiss the protest for lack of subject matter jurisdiction.  *See, e.g.*, *Terry*, 96 Fed. Cl. at 144 (dismissing protest because plaintiff failed to demonstrate that the Army and Air Force Exchange Service is a "Federal agency" under section 1491(b), and thus holding that "the protest falls outside the jurisdictional grant conferred upon the Court of Federal Claims by the ADRA").

**A.    The AOUSC Is Not An "Administration" Under 28 U.S.C. § 451**

As explained in *Microgenics Corp*., 152 Fed. Cl. at 683, the plain language of the originating act dispels any argument that the AOUSC is an "administration" or a department,

---

[2] Although this Court does not possess jurisdiction to review protests involving AOUSC procurements, protestors may seek review of procurement actions at the Government Accountability Office (GAO).  *See, e.g.*, *Microgenics Corp.*, B-419470, 2021 WL 494646 (Feb. 2, 2021); *OMNIPLEX World Services Corp.*, B-415988.2, 2018 WL 6567686 (Dec. 12, 2018). Unlike the Court of Federal Claims, Congress has expressly granted the GAO, which is part of the legislative branch and wholly independent of the judiciary, protest jurisdiction over procurements from the judiciary.  *See* 31 U.S.C. § 3551; 40 U.S.C. § 472(b).

commission, authority, board or bureau of the United States under 28 U.S.C. § 451.  In the

originating act, Congress explicitly provides that the AOUSC is an "establishment."  *See* 53 Stat.

1223 ("There shall be at the seat of government an establishment to be known as the

Administrative Office of the United States Courts . . . .") (copy attached).  There is no indication

in the statute that the AOUSC is an administration or that the AOUSC could be both an

administration *and* an establishment.  In short, Congress created the AOUSC not as an

administration, but as an establishment which "provide[s] for the administration of the United

States Courts."  53 Stat. 1223.

### B.    SIXGEN Cannot Establish That The AOUSC Is An "Independent Establishment"

As the Federal Circuit in *Emery* explained, to establish jurisdiction, SIXGEN must show

that the AOUSC "falls within the ambit" of 28 U.S.C. § 451.  *Emery*, 264 F.3d at 1080.  The

plain text of section 451 provides that an agency includes:  "any department, *independent*

*establishment*, commission, administration, authority, board or bureau of the United States . . . ."

SIXGEN offers no theory as to why the AOUSC would fall within this definition.  Although the

AOUSC is an "establishment,"[3] the plain language of the statute reads "independent

establishment."  28 U.S.C. § 451.  SIXGEN does not contend or attempt to demonstrate that the

AOUSC is an *independent* establishment.  As explained in *Microgenics Corp.*, 152 Fed. Cl. at

683, "in contrast to entities such as the United States Postal Service and the Office of Personnel

Management, the AOUSC is not statutorily defined as an independent establishment.  *Id.*

(comparing 39 U.S.C. § 201 (There is established, as an independent establishment of the

---

[3] Congress expressly defined the AOUSC as an "establishment" in the judicial branch.
*See* 53 Stat. 1223.

executive branch of the Government of the United States, the United States Postal Service.") and 5 U.S.C. § 1101 ("The Office of Personnel Management is an independent establishment in the executive branch."), with 53 Stat. 1223 ("There shall be at the seat of government an establishment to be known as the Administrative Office of the United States Courts.").

Moreover, the weight of authority demonstrates that the AOUSC is not an independent establishment. The Director of the AOUSC is "appointed by the Supreme Court of the United States and hold[s] office at the pleasure of and subject to removal by the aforesaid Court." 53 Stat. 1223. Further, when Congress establishes an "independent establishment," it generally does so expressly.[4] Further, in *Emery*, the Federal Circuit explained that the USPS falls within 28 U.S.C. § 451's definition of "agency" because the USPS is "statutorily defined" (in the USPS's organic statute) as an independent establishment. *Emory*, 264 F.3d at 1080 (citing 39 U.S.C. § 201); *see also Hewlett-Packard Co. v. United States*, 41 Fed. Cl. 99, 106 (1998) ("The Postal Reorganization Act defines the USPS as 'an *independent establishment* of the executive branch of the Government of the United States. 39 U.S.C. § 201. The [*Butz*] Court found [USPS' statutory] definition *significant* in that title 28 defines 'agency' as including any 'independent establishment' of the United States. *Butz Eng'g Corp. v. United States*, 499 F.2d 619, 624 (1974).") (emphasis added). The Federal Circuit and this Court have recognized as much regarding other statutorily-defined "independent establishments." *See, e.g.*, *Ricci v. Merit*

---

[4] The same is true for the other listed entities in 28 U.S.C. § 451; entities known as "commission[s], administration[s], authorit[ies], board[s]," "bureau[s]," or "corporation[s]" are generally defined as such in the legislation creating them. *See, e.g.*, 42 U.S.C. § 7171(a) ("establish[ing] a "commission to be known as the Federal Energy Regulatory Commission"); 49 U.S.C. § 104(a) ("The Federal Highway Administration is an administration."); 5 U.S.C. §§ 7103(a)(6), 7104 (naming the National Labor Relations Authority as an "authority"); 45 U.S.C. § 154 ("establish[ing] a board to be known as the 'National Mediation Board'"); 30 U.S.C. § 1 ("establish[ing] . . . a bureau of mining, metallurgy, and mineral technology to be designated the United States Bureau of Mines.").

*Sys. Protection Bd.*, 953 F.3d 753 n.3 (Fed. Cir. 2020) ("OPM 'is an *independent establishment* in the executive branch,' 5 U.S.C. § 1101 . . . .") (emphasis added); *Grosdidier v. United States*, 77 Fed. Cl. 106, n.1 (2007) ("The [Broadcasting Board of Governors] is an *independent establishment* within the executive branch." (citing 22 U.S.C. § 6203; 5 U.S.C. § 104) (emphasis added)); *Catholic Univ. of America v. United States*, 49 Fed. Cl. 795, 797 (2001) ("The United States Soldiers' and Airmen's Home . . . was incorporated into an *independent establishment* within the Executive Branch in 1990." (citing 24 U.S.C. § 411, which explicitly provides that the Armed Forced Retirement Home is "an independent establishment") (emphasis added).

The AOUSC falls beyond the definition of an "independent establishment."  Because the listed entities in section 451's definition of "agency" are not further defined in title 28 of the United States Code, courts have "turn[ed] to title 5 of the United States Code for elucidation." *Terry*, 96 Fed. Cl. at 143 (citation omitted); *see also Scott v. Fed. Reserve Bank of Kansas City*, 406 F.3d 532, 535 (8th Cir. 2005) (same), *cert. denied,* 546 U.S. 216; *Dwyer v. Fidelity Nat'l Prop. & Casualty Ins. Co.*, 565 F.3d 294, 289 (5th Cir. 2009) (same); *Bercegeay v. Wright Nat'l Flood Ins. Co.*, 2019 WL 9091804, at *2 (M.D. La. 2019) (same).

In Title 5, Congress defines "independent establishment" as:

(1) an establishment in the *executive branch* (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment; and (2) the Government Accountability Office.

5 U.S.C. § 104 (emphasis added).

This definition makes clear that an "independent establishment" is an entity within the executive branch (or the Government Accountability Office).  In *Scott*, the Eighth Circuit Court of Appeals explained that the court can "infer that [independent establishment in 28 U.S.C. § 451] means an independent entity *within the executive branch* from other parts of the United

States Code." *Scott*, 406 F.3d at 535 (emphasis added) (citing 5 U.S.C. § 104).  In *Dwyer*, the Fifth Circuit Court of Appeals, in interpreting 28 U.S.C. § 451 for purposes of assessing eligibility for attorneys' fees, similarly held that the relevant company, Fidelity, a private insurer, did *not* qualify as an "independent establishment," because 28 U.S.C. § 451 means an "independent establishment *within the executive branch*."  *Dwyer*, 565 F.3d at 289 (relying on *Scott*, 406 F.3d at 535).  The AOUSC is not an "independent establishment" under 5 U.S.C. § 104, because it is not an establishment in the executive branch, nor is it the Government Accountability Office.

In summary, SIXGEN failed to allege that the AOUSC is an "independent establishment" under 28 U.S.C. § 451, let alone meet its burden to prove as much and, as explained above, the weight of authority suggests otherwise.

### C.   SIXGEN Cannot Rely On The "Context" Proviso

As explained above, section 451 of Title 28 of the United States Code defines "agency" as:

> [A]ny department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, *unless the context shows that such term was intended to be used in a more limited sense*.

The AOUSC is not an agency under the "context" proviso[5] italicized above.  The "context" proviso in 28 U.S.C. § 451 is intended to allow for the exclusion of an entity that otherwise *falls within* the listed entities in 28 U.S.C. § 451.  In *Emery*, after finding that the

---

[5] A proviso is a clause that "remove[s] special cases from the general enactment and provide[s] for them specially," while an exception "restrict[s] the enacting clause to a particular case."  Norman Singer & Shambie Singer, 1A Sutherland Statutory Construction § 20:22 (7th ed. database updated Nov. 2015) (citing *Int'l Trading Co. v. United States*, 412 F.3d 1303, 1312 (Fed. Cir. 2005)).

USPS fell within 28 U.S.C. § 451's phrase "independent establishment," the Federal Circuit explained that it would then consider context of the statute to determine if it "shows that the term 'agency' was intended to be used in a *more limited sense than described in § 451*." *Emery*, 264 F.3d at 1081 (emphasis added).  Here, because SIXGEN cannot establish that the AOUSC falls within the definition of "agency" under 28 U.S.C. § 451, the Court need not consider whether the context further narrows that definition.  Consequently, the complaint should be dismissed for lack of jurisdiction.[6]

## CONCLUSION

Accordingly, the Court should dismiss SIXGEN's complaint for lack of subject matter jurisdiction.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Douglas K. Mickle
DOUGLAS K. MICKLE
Assistant Director

/s/ Domenique Kirchner
DOMENIQUE KIRCHNER
Senior Trial Counsel
Commercial Litigation Branch

Julie Neville
Assistant General Counsel
Office of the General Counsel

---

[6] At most, 28 U.S.C. § 451 could be read to provide context related to just one term, "department," by expressly defining that term in the statute to mean "one of the executive departments enumerated in section 1 of Title 5, unless the context shows that such term was intended to describe the executive, legislative, or judicial branches of the government."  The AOUSC is plainly not a "department" under this definition.  The AOUSC is not one of the named "executive departments" listed in 5 U.S.C. § 101 and there is no further context that shows "department" was intended to include the judicial branch.  Because 28 U.S.C. § 451 "includes an explicit definition" of "department," the Court "must follow that definition." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000).

Administrative Office of the U.S. Courts          Civil Division
                                                  Department of Justice
                                                  P.O. Box 480
                                                  Ben Franklin Station
                                                  Washington, D.C.  20044
                                                  Tel: (202) 307-1111
                                                  Domenique.Kirchner@usdoj.gov

October 20, 2023                                  Attorneys for Defendant